NOTICE

*The text of this opinion can be corrected before the opinion is published in the <u>Pacific Reporter</u>. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| CHAWN D. SUMMERALL, | Court of Appeals No. A-14055 |
| Appellant, | Trial Court No. 3KO-10-00279 CR |
| v. | |
| STATE OF ALASKA, | O P I N I O N |
| Appellee. | No. 2788 — August 16, 2024 |

Appeal from the Superior Court, First Judicial District, Juneau, Daniel Schally, Judge.

Appearances: Renee McFarland, Assistant Public Defender, and Terrence Haas, Public Defender, Anchorage, for the Appellant. Ann B. Black, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Harbison and Terrell, Judges.

Judge HARBISON.

In 2010, Chawn D. Summerall was convicted, following a jury trial, of first-degree assault for beating up a person who later died from his injuries.[1] The

---

[1] Former AS 11.41.200(a) (pre-October 2019 version).

evidence indicated that Summerall was intoxicated when the assault occurred. The superior court sentenced Summerall to 20 years with 9 years suspended (11 years to serve) and 5 years of probation and imposed special conditions of probation to address Summerall's substance use. Under these original conditions, Summerall was required to obtain a substance abuse evaluation and spend up to 6 months in a residential substance abuse treatment program if recommended by the evaluation.

Between 2020 and 2022, the superior court revoked Summerall's probation five separate times for conduct relating to substance abuse. As part of the disposition of the State's fifth petition to revoke probation, the court added a condition requiring him to obtain a new substance abuse assessment and to follow its recommendations, including "up to 1 year of in-patient treatment." In this appeal, Summerall argues that this condition violated double jeopardy because it increased his punishment by requiring him to complete up to 1 year in residential treatment rather than the six-month period that his original judgment required.

The State raises two arguments in response. First, the State argues that this Court should decline to hear Summerall's claim because Summerall's attorney requested the very probation condition he now appeals. Second, the State argues that Summerall's double jeopardy claim fails on the merits because the court did not *increase* his overall punishment; rather, it *specified the manner* in which Summerall had to serve a portion of his outstanding suspended sentence.

For the reasons explained, we need not reach the State's waiver argument because we agree that Summerall's double jeopardy claim fails on the merits. The superior court did not increase Summerall's punishment in a manner that implicates double jeopardy. Rather, it exercised its discretion to modify his probation by specifying the manner in which Summerall may have to spend 1 year of his outstanding suspended sentence.

*Background facts and proceedings*

In 2008, Summerall and his co-defendant assaulted Darrell Cavaness, who later died from the injuries he sustained. Following a jury trial, Summerall was convicted of first-degree assault but acquitted of second-degree murder.[2] The evidence indicated that Summerall was intoxicated when the assault occurred.[3]

In 2010, the superior court sentenced Summerall to 20 years with 9 years suspended (11 years to serve) and a 5-year term of probation. Summerall was thirty-one years old at the time of sentencing and had previously been convicted of nine misdemeanors, many of which involved alcohol or controlled substances. The court accordingly imposed several special probation conditions to address Summerall's substance use.

Special Condition No. 2 ordered that Summerall obtain a substance abuse evaluation within 60 days from his release from prison and "make the results of the evaluation available to the Probation/Parole Officer." Special Condition No. 3 authorized his probation officer to order Summerall to spend up to 6 months in a "residential treatment program":

> [Special Condition No. 3:] The defendant shall actively participate in and successfully complete an approved substance abuse program if recommended by the evaluation, which may include a residential treatment program of up to six (6) months, at the direction of the Probation/Parole Officer. The defendant shall not discontinue treatment without the prior written approval of his Probation/Parole Officer.

---

[2] AS 11.41.200(a) and AS 11.41.110(a), respectively.

[3] Several witnesses testified that Summerall was "highly intoxicated" before and after the incident.

After serving the active portion of his sentence, Summerall was released from incarceration and placed on concurrent parole and probation supervision.[4] Between May 2020 and April 2022, the superior court revoked Summerall's probation five separate times. The fourth and fifth petitions are relevant to this appeal.

In December 2021, the State filed a fourth petition to revoke probation alleging that Summerall consumed drugs and that his urinalysis test was positive for methamphetamine and marijuana. Summerall admitted this conduct. Following a contested disposition, the court revoked Summerall's probation, requiring him to serve 6 months of his suspended time and extending his probation by 1 year. The court also added a condition authorizing Summerall's probation officer to require Summerall to spend 6 months at a community residential center (CRC) — *i.e.*, a halfway house.[5]

In April 2022, the State filed a fifth petition alleging that Summerall failed to report to his probation officer and failed to submit to drug and alcohol testing as directed.[6] Summerall admitted to these allegations, and his case proceeded to a contested disposition hearing.

At this hearing, the State expressed concern about Summerall's recent substance use given his history of assaulting people while intoxicated (including the fatal assault in this case). The State noted that, after the fourth petition was adjudicated, the court added a condition that Summerall reside in a CRC, but that Summerall "didn't follow through."

---

[4] Summerall was initially released and placed on parole and probation supervision in December 2016. Between December 2016 and December 2017, Summerall violated his parole six separate times by consuming either controlled substances or alcohol. On December 8, 2017, the Parole Board revoked his parole and required him to serve all remaining good time. Summerall was released on probation in March 2020.

[5] *See Summerall v. State*, __ P.3d __, 2024 WL 3309436 (Alaska App. July 5, 2024) (affirming the disposition of Summerall's fourth petition to revoke probation).

[6] The petition alleged that Summerall violated General Condition No. 5 and Special Condition No. 5.

Probation Officer Ian Petershoare next addressed the court. Petershoare explained that despite Summerall's poor history on supervised release, Petershoare believed that Summerall could succeed this time if he received treatment for substance use. Petershoare also corrected the State's remark that Summerall "didn't follow through" with residing in a CRC, noting that because the CRC did not previously have bed space for him, Summerall was "release[d] . . . to the street." Petershoare requested that the court again order Summerall to reside in a CRC, and assured the court that the CRC would have bed space for Summerall.

The defense attorney agreed with Petershoare that release to a CRC was advisable; accordingly, the attorney requested a time-served sentence and asked the court to "structure a judgment that would allow a bed-to-bed transfer [from incarceration directly into a CRC]." Additionally, the defense attorney requested that the court order Summerall to perform community service and that Summerall receive "an updated drug assessment in order to get into inpatient treatment if that's what's recommended."

The superior court revoked Summerall's probation, imposed 14 months of suspended time, and returned Summerall to probation under modified conditions of probation. The conditions included:

> Defendant to get a new substance use assessment. Defendant to follow all treatment recommendations including up to 1 year of in-patient treatment, and sign all necessary ROIs. Defendant to spend up to 6 months at CRC.

In its sentencing remarks, the court explained that it had been inclined to "pull the plug" on Summerall's probation altogether, but that because various stakeholders believed that returning Summerall to probation would be beneficial, it would not "stand in the way of that."

This appeal followed.

*Why the superior court did not violate the prohibition against double jeopardy when it modified Summerall's probation*

Summerall argues that the superior court's disposition order resolving the fifth petition to revoke his probation violated the constitutional prohibition against double jeopardy. According to Summerall, the court impermissibly increased his punishment beyond what was ordered by the original judgment when it added the condition that he obtain a new substance abuse evaluation and "follow all treatment recommendations including up to 1 year of in-patient treatment." As support for his position, Summerall relies on this Court's decision in *Dodge v. Anchorage*, holding that "[c]ustodial confinement in a residential alcohol treatment program is the functional equivalent of jail time and therefore constitutes a sentence of imprisonment."[7] He asserts that the new condition requiring up to 1 year of in-patient treatment imposes a more severe punishment than the original sentence (but he concedes that, if he has not yet participated in residential treatment, he may still be required to participate in residential treatment of up to 6 months as ordered in his original judgment).

The State disputes Summerall's assertion that the new probation condition increased his overall punishment. The State notes that Summerall had over 7 years of outstanding suspended time when the condition authorizing "up to 1 year of in-patient treatment" was ordered. The State also notes that when a court modifies probation conditions to the defendant's detriment, the modification does not necessarily violate double jeopardy. The State posits that the contested probation condition in this case did not "increase" Summerall's sentence, but instead merely imposed up to 1 year of his outstanding suspended time and required Summerall to serve that time in an inpatient treatment program.[8]

---

[7]     *Dodge v. Anchorage*, 877 P.2d 270, 272 (Alaska App. 1994).

[8]     The State also argues that Summerall may not raise his double jeopardy claim on appeal under principles of waiver and invited error. The State identifies that before the court entered its disposition order on Summerall's fifth petition to revoke probation, his

Courts have broad discretion to place defendants on probation and to order that they abide by conditions of probation,[9] as long as the conditions are "reasonably related to at least one of the[] constitutional principles" of criminal administration set out in Article I, Section 12 of the Alaska Constitution.[10] Courts also have broad discretion to "revoke or modify any condition of probation, change the period of probation, or terminate probation and discharge the defendant from probation."[11] However, there are circumstances under which the court's discretion over probation is circumscribed by the double jeopardy clause.

The Alaska Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense."[12] The double jeopardy clause protects defendants from receiving multiple punishments for the same offense. As the Alaska Supreme Court has explained, "once a sentence has been meaningfully imposed, it may not, at a later time, be increased."[13] Thus, courts are forbidden from "imposing a new sentence

---

defense attorney requested "an updated drug assessment in order to get [Summerall] into inpatient treatment if that's what's recommended." In *Johnson v. State*, the Alaska Supreme Court explained that, while double jeopardy claims ordinarily may be raised for the first time on appeal, a defendant may waive such a claim if they knowingly and willingly relinquish their right to double jeopardy protection. *Johnson v. State*, 328 P.3d 77, 82-85, 82 n.20 (Alaska 2014). Under this principle, we question whether Summerall waived his double jeopardy claim. However, we decline to reach this procedural issue because we agree that Summerall's double jeopardy claim fails on the merits.

[9] AS 12.55.090-.100.

[10] *State v. Ranstead*, 421 P.3d 15, 19-20 (Alaska 2018).

[11] AS 12.55.090(b); *Reyes v. State*, 978 P.2d 635, 639 (Alaska App. 1999) (explaining that "the legislature intended probation to be modifiable").

[12] Alaska Const. art. I, § 9. *See also* U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb.").

[13] *Sonnier v. State*, 483 P.2d 1003, 1005 (Alaska 1971); *see also Reyes*, 978 P.2d at 637-38.

more severe than the one the defendant originally received."[14] In other words, when a trial court exercises its discretion to modify a defendant's probation, it may not impose a condition that causes the defendant's sentence to be more severe than the sentence the court originally imposed without violating principles of double jeopardy.

We have applied this principle in previous cases, holding that a modification to a defendant's probation violates double jeopardy if the modified condition increases a defendant's overall jail time,[15] increases the defendant's restitution or fine,[16] or if the modified condition is not authorized by Alaska's sentencing statutes.[17]

For example, in *Dodge v. Anchorage*, we held that the trial court violated double jeopardy by imposing the challenged probation condition.[18] Dodge had been convicted of driving while intoxicated and sentenced to a term of 1 year flat.[19] The district court later amended Dodge's judgment, imposing a probation condition requiring him to spend up to 90 days in a residential alcohol treatment program (in addition to serving the 1 year in prison).[20] Dodge appealed, arguing that the probation condition violated the constitutional prohibition against double jeopardy by increasing his sentence.[21] This Court agreed, holding that because "confinement in a residential

---

[14] *Reyes*, 978 P.2d at 637-38; *see also Sonnier*, 483 P.2d at 1005.

[15] *See Dodge v. Anchorage*, 877 P.2d 270, 272 (Alaska App. 1994).

[16] *See Reyes*, 978 P.2d at 641.

[17] *Galindo v. State*, 481 P.3d 686, 690 (Alaska App. 2021).

[18] *Dodge*, 877 P.2d at 272.

[19] *Id.* at 271.

[20] *Id.* at 271-72.

[21] *Id.* at 272.

alcohol treatment program is the functional equivalent of jail time," the trial court unconstitutionally increased Dodge's total jail time (or equivalent) from 1 year, to 1 year and 90 days.[22]

In the present matter, Summerall argues that the trial court violated double jeopardy by imposing an additional probation condition requiring him to spend up to 1 year in an inpatient treatment program. Citing *Dodge*, Summerall argues that because inpatient treatment is akin to jail time, the court violated the double jeopardy clause when it added this requirement because it exceeded the 6 months of residential treatment originally authorized.

Summerall is mistaken. As the State points out, when Summerall was sentenced on his fifth petition to revoke probation, he had over 7 years of suspended time remaining on his sentence. Accordingly, when the court revoked his probation, it could have ordered Summerall to spend *all* of his remaining suspended time in prison without violating double jeopardy. Instead, the court sentenced Summerall to 14 months to serve in the custody of the Department of Corrections, an additional 6 months to serve in a CRC, *i.e.* a halfway house, and up to 1 additional year of in-patient treatment. In other words, the court ordered Summerall confined to jail or the functional equivalent of jail for up to 2 years and 8 months — *i.e.*, just over one-third of the 7 years of suspended time remaining on his sentence.

This disposition did not violate Summerall's double jeopardy rights. It is established law that courts may modify probation or impose suspended time in a manner that is detrimental to the defendant without violating the double jeopardy clause as long as the defendant's sentence is not *increased*.[23] Unlike in *Dodge*, where the court's action increased the original sentence from 1 year to 1 year and 90 days, in Summerall's case,

---

[22]  *Id.*

[23]  *See Reyes v. State*, 978 P.2d 635, 639-40 (Alaska App. 1999).

the total jail time imposed (up to 2 years and 8 months) was *less than* the time remaining on Summerall's original sentence (over 7 years).[24]

For these reasons, we reject Summerall's double jeopardy claim.

*Conclusion*

We AFFIRM the judgment of the superior court.

---

[24]  *Dodge*, 877 P.2d at 272.